UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

DEMARIS L. LUGO,                         :

                    Plaintiff,     :     13 Civ. 1767 (JPO)(HBP)

    -against-                      :     REPORT AND
                                         RECOMMENDATION
CAROLYN W. COLVIN, Acting          :
Commissioner of Social Security,
                                   :

                    Defendant.     :
                                   :
----------------------------------X

            PITMAN, United States Magistrate Judge:

            TO THE HONORABLE J. PAUL OETKEN, United States District

Judge,


I.  Introduction

            Plaintiff Demaris L. Lugo brings this action pursuant

to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g),

seeking judicial review of a final decision of the Commissioner

of Social Security ("Commissioner") denying her application for

supplemental security income ("SSI").  Plaintiff and the Commis-

sioner have both moved for judgment on the pleadings pursuant to

Rule 12(c) of the Federal Rules of Civil Procedure (Docket Items

22 and 25, respectively).

For the reasons set forth below, I respectfully recommend that plaintiff's motion for judgment on the pleadings be granted and this matter remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this report and recommendation.  I further recommend that the Commissioner's motion for judgment on the pleadings be denied.

II.  Facts

A.  Procedural Background

Plaintiff filed an application for SSI on November 22, 2011 (Tr.[1] 109-17, 150-52).  She alleges that from March 28, 2011, she has suffered from several conditions that have rendered her unable to work, including bipolar disorder, depression, arthritis, nerve damage and carpal tunnel syndrome (Tr. 109-117, 154).

The Commissioner denied plaintiff's application on January 19, 2012 (Tr. 51-62).  Plaintiff requested a hearing, which was granted and held on July 5, 2012 before Administrative Law Judge ("ALJ") Gitel Reich (Tr. 24-43).  At the hearing,

---

[1]"Tr." refers to the administrative record that the Commissioner filed with its answer, pursuant to 42 U.S.C. § 405(g) (see Certification of Social Security Administrative Record, dated May 25, 2013 (Docket Item 14)).

plaintiff testified that:  she is ambidextrous (Tr. 29); she had recently attempted to seek employment, but had been unsuccessful because she could not travel alone or tolerate people for long periods of time (Tr. 33); she had been turned down for a job as a result of her criminal history (Tr. 33); her asthma symptoms were under control, when using her medications, and she was continuing to experience numbness in her finger and pain in her left hand (Tr. 35-36).

In a decision dated September 12, 2012, the ALJ determined that plaintiff was not disabled (Tr. 7-22).  The ALJ's determination became the Commissioner's final decision on January 18, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-6).

Plaintiff commenced this action on March 19, 2013. Plaintiff and the Commissioner filed their cross-motions for a judgment on the pleadings on December 2, 2013 and December 20, 2013, respectively (Docket Items 22, 25).

B.  The Medical Record

Plaintiff was born in the United States on May 10, 1985 (Tr. 109, 298).  She earned a general education degree ("GED"), has completed some college-level courses and received a license in cosmetology in June 2011 (Tr. 155, 301).  Plaintiff had been

convicted in 2004 in connection with a felony drug charge and
served four and a half years in prison (Tr. 110, 303).  At the
time she filed this application, she was living alone in an
apartment in Manhattan (Tr. 110).

The medical evidence in the record dates back to
January 29, 2010 when plaintiff visited an outpatient chemical
dependency program in the Woodhull Medical and Mental Health
Center ("Woodhull").  Plaintiff had apparently become "very
upset" after her visit and sought a meeting with a social worker
at Woodhull.  The hospital staff informed the social worker that
plaintiff had refused treatment at the outpatient program because
she could not participate in the groups and attend daily programs
(Tr. 429).  Plaintiff informed the social worker that she had
been terminated from the program because her dependency was
limited to marijuana use.  The social worker referred plaintiff
to a psychiatrist because plaintiff had requested psychotropic
medication and expressed suicidal thoughts (Tr. 429).

On December 2, 2010, plaintiff underwent a physical
examination at the George and Eva Nell Barbee Family Health
Center ("Barbee").  The medical notes from that day indicate that
plaintiff had a prior history of asthma (Tr. 225, 232).  On
December 10, 2010, a medical note regarding unspecified "lab
results" indicates that "all tests [were] normal" (Tr. 231, 421).

In March 2011, plaintiff visited the Harlem Hospital Center with a deep wound to her left wrist that required stitches (Tr. 393, 403).  Plaintiff explained that she "had cut her left wrist while cleaning up glass from a broken window" (Tr. 223, 412; see also Tr. 356, 368).  However, in other documents, she described the incident as a suicide attempt; specifically, she claimed she had "attempted to cut her wrist with glass" (Tr. 273, 306; see also Tr. 292, 403).  Barbee's records indicate that plaintiff thereafter experienced a decreased range of motion on her left wrist (Tr. 226, 416).  Plaintiff was referred to physical therapy on April 7, 2011 after she complained of numbness in the fifth metacarpal of her left hand (Tr. 223, 412).  From April to July 2011, plaintiff continued to complain of numbness at that location, although the treatment notes indicate that the laceration on her left wrist was "healing nicely" (Tr. 209-24).

On August 9, 2011, plaintiff met with Loretta J. Perry-Moore, a licensed clinical social worker at Barbee, and informed her that she felt "all alone" (Tr. 235).  Plaintiff described a history of physical and sexual abuse by present and former boyfriends; she also informed Perry-Moore that she had been incarcerated for selling drugs (Tr. 236).  She recounted her psychiatric history, informing Perry-Moore that she had been hospitalized in 2003 for overdosing on Zanax and had received individual

5

therapy for depression and anxiety while in prison (Tr. 236).

Plaintiff admitted to smoking marijuana daily and hearing voices,

but denied any alcohol abuse (Tr. 235-36, 239).  She also noted

that she was training in cosmetology, but had not worked in three

years (Tr. 238).  Her memory appeared good and her intelligence

was average (Tr. 239).  Her mental status examination showed that

she was oriented, although her mood appeared anxious and de-

pressed (Tr. 248).  Perry-Moore referred plaintiff to a psychia-

trist for an evaluation and concluded that plaintiff's Global

Assessment of Functioning ("GAF") was 55[2] (Tr. 235, 239).

Dr. Andrew A. Burger examined plaintiff at the Lincoln

Medical and Mental Health Center ("Lincoln") on September 26,

2011 (Tr. 367-70).  Plaintiff explained she had slipped and

lacerated the anterior of her left wrist in March 2011, and since

then, had experienced progressive pain in her left wrist and

hand, especially when she was flexing them.  She also complained

of numbness and tingling in the fifth metacarpal of her left

_____

[2]GAF rates the overall psychological functioning on a scale
of 0 to 100 that takes into account psychological, social and
occupational functioning.  A GAF in the range of 51 to 60 indi-
cates "[m]oderate symptoms (e.g., flat affect and circumstantial
speech, occasional panic attacks) OR moderate difficulty in
social, occupational, or school functioning (e.g., few friends,
conflicts with peers or co-workers)."  American Psychiatric
Association, Diagnostic and Statistical Manual of Mental Disor-
ders, at 34 (4th ed. rev. 2000).

hand, and said "the pain [could] be debilitating at times" (Tr. 368).  Upon examination, Dr. Burger found that plaintiff was alert and fully oriented and had full strength throughout her left hand with the exception of a diminished grip (Tr. 369).  Dr. Burger diagnosed plaintiff with ulnar lesion, referred her to a hand clinic, prescribed 300 mg of Neurontin and advised her to wear a splint and avoid strenuous work (Tr. 369).  Plaintiff continued to complain of numbness and pain in her left hand as of October 2011 (Tr. 215).

On November 9, 2011, Dr. Lavonna Branker of the Federation Employment and Guidance Service ("FEGS") prepared a biophysical summary report ("BPS") concerning plaintiff (Tr. 324).  Dr. Branker noted that plaintiff had complained of auditory hallucinations that told her to do "bad things" and had asserted a general distrust and dislike of other people, and experienced feelings of depression, anxiety and possible agoraphobia (Tr. 324).  The notes also indicate that plaintiff was first diagnosed with bipolar disorder and schizophrenia in 2001 (Tr. 324).  An examination of plaintiff's wrist showed negative Tinel's[3] and

_____

[3]Tinel's sign is a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve.  Dorland's Illustrated Medical Dictionary at 1741 (31st ed. 2007) ("Dorland's").

Phalen's[4] signs, but decreased sensation in her fourth and fifth
fingers of her left hand (Tr. 313).  Dr. Branker also noted that
plaintiff was "presently employed" (Tr. 324).  That same day,
plaintiff met with Patrick Walters, a FEGS Social Worker.
Plaintiff informed Walters that she was training in real estate
and working as a receptionist (Tr. 301, 302).  She also reported
a history of ten suicide attempts, with the most recent one
having occurred in March 2011 (Tr. 306).  Plaintiff reported that
her barriers to employment were "carpal tunnel [syndrome] in both
hands, and nerve damage in the left hand" (Tr. 308).

On November 14, 2011, Dr. Branker diagnosed plaintiff
with, among other things, left ulnar neuropathy, bipolar disorder
with schizoaffective features and personality disorder (Tr. 253).
Dr. Branker found that plaintiff's medical issues were "clini-
cally stable" and that plaintiff could work with accommodations
for her medical issues, as long as she was cleared by a psychia-
trist (Tr. 253).  According to Dr. Branker, plaintiff would not
be able to travel during rush hours as a result of her anxiety

---

[4]Phalen's sign is a test used for the detection of carpal
tunnel syndrome whereby the size of the carpal tunnel is reduced
by holding the affected hand with the wrist fully flexed or
extended for thirty to sixty seconds or by placing a sphygmoma-
nometer cuff on the involved arm and inflating to a point between
diastolic and systolic pressure for thirty to sixty seconds.
Dorland's at 1117.

(Tr. 253, 317, 325).  Dr. Branker's BPS report noted that plain-
tiff was not employed; rather, she helped at a friend's business
from time to time in order "to keep busy" (Tr. 317, 325).
Finally, the BPS report indicated that plaintiff has had a
chronic psychiatric history as well as reduced concentration,
tolerance for stress, ability to work closely with others and
ability to adhere to a regular work routine, all of which were
"expected to last over one year" (Tr. 253).

According to a FEGS BPS Phase II report, issued by Dr.
Harvey Barash and dated November 14, 2011, plaintiff was found to
be "[p]ermanently disabled from work" as a result of her mental
impairments (Tr. 329).  Plaintiff was "too anxious [and] phobic
to travel [during] rush hour on a regular basis" (Tr. 329).  An
examination of her mental status showed that she was cooperative
and oriented (Tr. 328).  A test of her functional impairments
showed that her ability to follow work rules, accept supervision,
maintain attention and adapt to stressful situations was moder-
ate; and her ability to deal with the public, relate to co-
workers and adapt to change were mild (Tr. 328).

On December 12, 2011, plaintiff underwent an examina-
tion at Lincoln Hospital and complained of tingling in her fifth
finger (Tr. 361-63).  Dr. George Verghese found that plaintiff's
wrist had "healed well" and that she was able to make a "firm

9

fist" (Tr. 362).  Plaintiff was told to discontinue using her wrist splint (Tr. 362).

Dr. Michael Alexander, a psychiatrist at Industrial Medicine Associates, P.C., conducted a consultative examination on January 4, 2012 (Tr. 288-91).  Plaintiff informed Dr. Alexander that she lived alone and had been unemployed since 2003 (Tr. 288).  She explained that she had been incarcerated from 2004 to 2008 and in school for cosmetology from 2010 to 2011 (Tr. 288).  Although she had recently attempted to find employment, she had been unsuccessful (Tr. 288).  Plaintiff reported that she had been seeing mental health professionals "off and on" since 2002 (Tr. 288).  She informed him that she was hospitalized in 2003 for her depression, and was seeing a therapist on a weekly basis at a FEGS outpatient clinic (Tr. 288).

Dr. Alexander described plaintiff as "a cooperative, friendly and alert female" (Tr. 289).  He concluded that her "manner of relating and social skills were adequate" and upon examination found "no evidence of cognitive deficit" (Tr. 289). (Tr. 289).  Specifically, plaintiff exhibited normal gait, posture and motor behavior as well as adequate speech, and coherent thought processes with no evidence of hallucinations (Tr. 289).  She appeared fully oriented and her attention, concentration and memory skills were intact (Tr. 290).  She was

estimated to be in the low to somewhat below average range of cognitive functioning (Tr. 290). He concluded that plaintiff was able to "follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, main-tain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and [] appropriately deal with stress" (Tr. 290).

Dr. Alexander diagnosed plaintiff with schizoaffective disorder, poly-substance dependence in sustained remission and rule out personality disorder (Tr. 291). Dr. Alexander opined that plaintiff's substance abuse and psychiatric problems were sufficiently controlled and did not significantly interfere with her ability to function on a daily basis (Tr. 290).

Plaintiff also underwent an internal medicine examina-tion with Dr. Aurelio Salon on January 4, 2012 (Tr. 292-95). She informed him that she started smoking cigarettes at the age of 11 and continued to smoke one pack a day (Tr. 293). She stated that she could cook, clean, do laundry, shop, shower, bathe and dress herself on her own (Tr. 293). Plaintiff's general appearance and gait were normal, and she appeared to be "in no acute distress" (Tr. 293). Her skin, head and face, eyes, neck, chest and lungs, heart and abdomen were found to be normal (Tr. 293-94). She had full rotary movement bilaterally and full range of motion in her

shoulders, elbows, forearms and wrists (Tr. 294).  No sensory
deficits were noted and plaintiff had full strength in both her
upper and lower extremities (Tr. 294).  Plaintiff also had
negative Tinel's signs bilaterally and her grip strength was full
bilaterally (Tr. 294-95).  Her mental status appeared normal, and
Dr. Salon found no evidence of hallucinations, delusions, im-
paired judgment or memory impairment (Tr. 295).

     Dr. Salon noted a history of anxiety, depression,
bipolar disorder, schizophrenia, multiple personality disorder,
bronchial asthma, left arm ulnar nerve damage, bilateral carpal
tunnel syndrome and substance abuse (Tr. 295).  He concluded that
there were no objective findings to support the fact that plain-
tiff was restricted in her ability to sit or stand or in her
capacity to climb, push, pull or carry heavy objects (Tr. 295).
In light of plaintiff's history of bronchial asthma, Dr. Salon
recommended that plaintiff avoid smoke, dust and other respira-
tory irritants (Tr. 295).

     On January 13, 2012, psychiatrist Dr. M. Apacible
concluded that plaintiff's mental impairments were not severe
(Tr. 331).

     In February and March 2012, plaintiff continued to
complain about pain, numbness and tingling in her left hand (Tr.
356, 359, 402).  She described the level of pain in her left hand

as a "4" on a scale of one to ten (Tr. 356).  Three x-rays of her
left wrist taken on April 25, 2012 showed no abnormalities and no
atrophy (Tr. 354).  Plaintiff completed a physical examination at
Barbee on May 24, 2012 and was found to be in "good condition"
(Tr. 392).

Dr. Carl Saint-Preux, a psychiatrist, completed a
Medical Source Statement of Ability to do Work-Related Activities
(Mental) on July 25, 2012 for plaintiff (Tr. 431-33).  He found
that plaintiff had extreme limitations in her ability to under-
stand and remember detailed instructions; to interact appropri-
ately with the public, supervisors and co-workers; and to respond
to work pressures (Tr. 431, 433).  He indicated that plaintiff
had marked limitations in her ability to understand and remember
simple instructions; carry out simple or detailed instructions;
make judgments on simple work-related decisions and respond
appropriately to changes in a routine work setting (Tr. 431,
433).

III.  Analysis

    A.  Applicable Legal
       Principles

      1.  Standard of Review

      The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence or if it is based upon an erroneous legal standard.  42 U.S.C. § 405(g); Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999); Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998).  The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence.  Tejada v. Apfel, supra, 167 F.3d at 773-74; Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Ellington v. Astrue, 641 F. Supp. 2d 322, 327-28 (S.D.N.Y. 2009) (Marrero, D.J.).  "Even if the Commis-sioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."  Ellington v. Astrue, supra, 641 F. Supp. 2d at 328; accord Johnson v. Bowen, supra, 817 F.2d at 986.  However, "where application of the correct legal principles to the record could

14

lead to only one conclusion, there is no need to require agency reconsideration." Johnson v. Bowen, supra, 817 F.2d at 986.

"'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). "Consequently, where [there is] substantial evidence . . . this Court may not substitute its own judgment as to the facts, even if a different result could have been justifiably reached upon de novo review." Beres v. Chater, 93 Civ. 5279 (JG), 1996 WL 1088924 at *5 (E.D.N.Y. May 22, 1996); see Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Thus, "'[t]o determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" Terwilliger v. Comm'r of Soc. Sec., No. 3:06-CV-0149 (FJS/GHL), 2009 WL 2611267 at *2 (N.D.N.Y. Aug. 24, 2009), quoting Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

A remand is appropriate "'[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard.'" Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996),

15

quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980) and Hankerson v. Harris, 636 F.2d 893, 896 (2d Cir. 1980).  "Remand is particularly appropriate where . . . [the court is] 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'"  Pratts v. Chater, supra, 94 F.3d at 34, quoting Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (per curiam); accord Baron v. Astrue, 11 Civ. 4262 (JGK)(MHD), 2013 WL 1245455 at *19 (S.D.N.Y. Mar. 4, 2013) (Dolinger, M.J.); Patterson v. Astrue, No. 7:06-CV-0897 (LEK), 2010 WL 3909605 at *5 (N.D.N.Y. Sept. 29, 2010); Swan v. Astrue, No. 09-CV-0486-S, 2010 WL 3211049 at *2 (W.D.N.Y. Aug. 11, 2010); Davis v. Astrue, No. 7:06-CV-00657 (LEK), 2010 WL 2925357 at *2 (N.D.N.Y. July 21, 2010).

      2.  Determination of
         Disability

A claimant is entitled to SSI benefits if he or she can establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see also Barnhart v. Walton, 535 U.S. 212,

217-22 (2002) (both impairment and inability to work must last

twelve months).  The impairment must be demonstrated by "medi-

cally acceptable clinical and laboratory diagnostic techniques,"

42 U.S.C. § 423(d)(3), and it must be

> of such severity that [the claimant] is not only unable
> to do [the claimant's] previous work but cannot, con-
> sidering [the claimant's] age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate
> area in which [the claimant] lives, or whether a spe-
> cific job vacancy exists for [the claimant], or whether
> [the claimant] would be hired if [the claimant] applied
> for work.

42 U.S.C. § 423(d)(2)(A).

The Commissioner must consider both objective and

subjective factors when assessing a disability claim, including:

(1) objective medical facts and clinical findings; (2) diagnoses

and medical opinions of examining physicians; (3) subjective

evidence of pain and disability to which the claimant and family

or others testify; and (4) the claimant's educational background,

age and work experience.  Brown v. Apfel, 174 F.3d 59, 62 (2d

Cir. 1999) (per curiam); DiPalma v. Colvin, 951 F. Supp. 2d 555,

565 (S.D.N.Y. 2013) (Peck, M.J.).

"In evaluating disability claims, the [Commissioner] is

required to use a five-step sequence, promulgated in 20 C.F.R.

§§ 404.1520, 416.920." Bush v. Shalala, 94 F.3d 40, 44 (2d Cir. 1996).

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where . . . the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to do basic work activities . . . . Where the claimant does suffer a severe impairment, the third inquiry is whether, based solely on medical evidence, he has an impairment listed in Appendix 1 of the regulations or equal to an impairment listed there . . . . If a claimant has a listed impairment, the Commissioner considers him disabled. Where a claimant does not have a listed impairment, the fourth inquiry is whether, despite his severe impairment, the claimant has the residual functional capacity to perform his past work . . . . Finally, where the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

Balsamo v. Chater, 142 F.3d 75, 79-80 (2d Cir. 1998); see also Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended in part on other grounds on rehearing, 416 F.3d 101 (2d Cir. 2005).

Step four requires that the ALJ make a determination as to the claimant's residual functional capacity ("RFC"). See Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). RFC is defined in the applicable regulations as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). To determine RFC, the ALJ makes a "function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push,

pull, reach, handle, stoop, or crouch . . . ."  Sobolewski v.
Apfel, 985 F. Supp. 300, 308-09 (E.D.N.Y. 1997).  The results of
this assessment determine the claimant's ability to perform the
exertional demands of sustained work, and may be categorized as
sedentary, light,[5] medium, heavy, or very heavy.  20 C.F.R.
§ 404.1567; see Rodriquez v. Apfel, 96 Civ. 8330 (JGK), 1998 WL
150981 at *7 n.7 (S.D.N.Y. Mar. 31, 1998) (Koeltl, D.J.).

     The claimant bears the initial burden of proving
disability with respect to the first four steps.  Burgess v.
Astrue, supra, 537 F.3d at 128; Balsamo v. Chater, supra, 142
F.3d at 80.  Once the claimant has satisfied this burden, the
burden shifts to the Commissioner to prove the final step -- that
the claimant's RFC allows the claimant to perform some work other

---

[5]     Light work involves lifting no more than 20 pounds at a
        time with frequent lifting or carrying of objects
        weighing up to 10 pounds.  Even though the weight
        lifted may be very little, a job is in this category
        when it requires a good deal of walking or standing, or
        when it involves sitting most of the time with some
        pushing and pulling of arm or leg controls.  To be
        considered capable of performing a full or wide range
        of light work, you must have the ability to do substan-
        tially all of these activities.  If someone can do
        light work, we determine that he or she can also do
        sedentary work, unless there are additional limiting
        factors such as loss of fine dexterity or inability to
        sit for long periods of time.

20 C.F.R. § 404.1567(b).

than the claimant's past work.  Butts v. Barnhart, supra, 388

F.3d at 383; Balsamo v. Chater, supra, 142 F.3d at 80.

> In meeting her burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid."  The Grid takes into account the claimant's RFC in conjunction with the claimant's age, education and work experience.  Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy.

Gray v. Chater, 903 F. Supp. 293, 297-98 (N.D.N.Y. 1995) (Koeltl,

D.J.).  When a claimant retains the RFC to perform at least one

of the categories of work listed on the Grid, and when the

claimant's educational background and other characteristics are

also captured by the Grid, the ALJ may rely exclusively on the

Grid in order to determine whether the claimant retains the RFC

to perform some work other than his or her past work.  Butts v.

Barnhart, supra, 388 F.3d at 383 ("In the ordinary case, the

Commissioner meets his burden at the fifth step by resorting to

the applicable medical vocational guidelines (the [Grid])."

(internal quotation marks and citation omitted)).

"[E]xclusive reliance on the [Grid] is inappropriate"

where non-exertional limitations "significantly diminish [a

claimant's] ability to work."  Butts v. Barnhart, supra, 388 F.3d

at 383 (internal quotation omitted); Bapp v. Bowen, 802 F.2d 601,

603 (2d Cir. 1986).  "'[S]ignificantly diminish' . . . mean[s] the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  Bapp v. Bowen, supra, 802 F.2d at 606.  This "intermediate question -- whether the range of work Bapp could perform was so significantly diminished as to require the introduction of vocational testimony" –- need not be answered using a vocational expert.  Bapp v. Bowen, supra, 802 F.2d at 606.  However, if the ALJ finds that the nonexertional limitations significantly diminish a claimant's ability to work, then the Commissioner must introduce the testimony of a vocational expert or other similar evidence in order to prove "that jobs exist in the economy which the claimant can obtain and perform."  Butts v. Barnhart, supra, 388 F.3d at 383 (internal quotation marks and citation omitted); see 20 C.F.R. §§ 404.1569a(d), Pt. 404, Subpt. P, App. 2, § 200.00(e); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983) ("If an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered.").

B.   The ALJ's
     <u>Decision</u>

The ALJ applied the five-step analysis described above
and determined that plaintiff was not disabled (Tr. 7-18).  At
step one, the ALJ found that plaintiff had not engaged in sub-
stantial gainful activity since November 22, 2011, the date of
her application (Tr. 12).  At step two, the ALJ found that
plaintiff suffered from the following severe impairments:
(1) schizoaffective disorder, (2) poly-substance abuse in sus-
tained remission, (3) asthma and (4) history of laceration at
left ulnar nerve (Tr. 12).  At step three, the ALJ concluded that
plaintiff's alleged impairments, either singly or in combination,
were not medically equal to the impairments listed in 20 C.F.R.
Pt. 404, Subpt. P, App. 1 (Tr. 12).  Specifically, she found that
plaintiff did not meet the listings for musculoskeletal disor-
ders, respiratory disorders, neurological disorders and mental
disorders (Tr. 12).  In making this determination, the ALJ also
considered whether plaintiff's mental impairments resulted in at
least two of the following -- marked restriction of activities of
daily living; marked difficulties in maintaining social function-
ing; marked difficulties in maintaining concentration, persis-
tence, or pace; or repeated episodes of decompensation, each of
extended duration -- and concluded that they did not (Tr. 12-13).

Specifically, the ALJ determined plaintiff had no restrictions in activities of daily living, moderate difficulties in social functioning and concentration, persistence or pace, which were taken into account in plaintiff's RFC, and only one episode of decompensation (Tr. 13).

The ALJ then determined that plaintiff retained the residual functional capacity to perform the full range of simple, light work, and added the following limitations:  (1) plaintiff had to work in an environment with frequent, but not constant, exposure to respiratory irritants and (2) plaintiff could only have occasional contact with people (Tr. 13-14, 16).  She found that plaintiff could "sit, stand and walk 6-hours in an 8-hour workday and [could] occasionally lift and carry 20 and frequently lift and carry 10 pounds" (Tr. 16).

In making this determination, the ALJ considered plaintiff's allegations and the medical record (Tr. 16).  The ALJ found that plaintiff's testimony during the hearing and the objective records did not substantiate her subjective allegation that certain symptoms prevented her from working on a sustained and continuous basis (Tr. 14).  First, according to the ALJ, during the hearing, plaintiff testified that:  (1) her medication regimen (consisting of Albuterol, a pump and nebulizer) kept her asthma symptoms under control (Tr. 14); (2) she had recently

23

attempted to find employment, but was rejected due to her crimi-
nal record (Tr. 14); (3) she had worked for several days in real
estate and quit for safety, as opposed to physical or mental,
reasons (Tr. 14), and (4) she was attempting to transition into
society and, if she could find a place where people would not
judge her, then she would be able to accept a job (Tr. 14).  The
ALJ relied on the foregoing statements in order to conclude that
plaintiff's own testimony did not substantiate her own claims
(Tr. 14).

        The ALJ found that the medical records also "[did] not
support a finding of disability" (Tr. 14).  The ALJ summarized
the medical records from Dr. Branker at FEGS, the medical treat-
ment notes from Barbee, Dr. Saint-Preux's June 25, 2012 Medical
Source Statement, Dr. Michael Alexander's January 4, 2012 psychi-
atric evaluation report and Dr. Aurelio Salon's January 4, 2012
internal medicine evaluation report (Tr. 14-15).  While the ALJ
conceded that plaintiff's impairments could be expected to cause
the symptoms she claimed to some degree, she found that plain-
tiff's statements regarding the intensity, persistence and
limiting effects of these symptoms were not consistent with the
objective medical evidence (Tr. 16).

        In general, the ALJ found that the medical record,
while indicating that plaintiff had a history of asthma, depres-

sion, poly-substance abuse and left ulnar laceration, did not "document the limitations" of which plaintiff complained (Tr. 16).  With respect to plaintiff's claimed mental impairments, the ALJ found that the medical records did not support plaintiff's allegation of multiple suicide attempts, and that Dr. Michael Alexander had concluded that plaintiff's insight and judgment were adequate and her attention and concentration were intact (Tr. 16).  She also noted that plaintiff had informed her psychiatrist that she had three close friends, a boyfriend and extended family in New York (Tr. 16).  The ALJ assigned only "some weight" to Dr. Saint-Preux's opinions because he had treated plaintiff for only three months and his assessment appeared exaggerated in light of plaintiff's own statements that she had attended school and recently made active attempts to find employment (Tr. 16). In any event, the ALJ believed she had addressed some of Dr. Saint-Preux's concerns by adding "mental limitations" to plaintiff's RFC (Tr. 16).

     With respect to plaintiff's allegation regarding the severity of the pain in her left hand and inability, as a result, to function in the workplace, the ALJ found that plaintiff was "not fully credible" (Tr. 16).  She noted that plaintiff was "ambidextrous and right-hand dominant," and that her January 4, 2012 examination had revealed no evidence of muscle atrophy or

nerve damage in either wrist or hand (Tr. 16).  Moreover, the ALJ
noted that plaintiff was able to perform all the activities of
daily living and could travel independently on her own (Tr. 16).
Further, she had 4/5 grip strength in her left hand and 5/5
strength in her dominant right arm (Tr. 16).  As a result of the
foregoing, the ALJ credited only those allegations that were
consistent with her final RFC assessment (Tr. 16).

At step four, the ALJ concluded that plaintiff had no
past relevant work (Tr. 17).

At step five, the ALJ found that jobs existed in
significant numbers in the national economy that plaintiff could
perform, given her RFC, age and education (Tr. 25-26).  She found
that plaintiff was a "younger individual," that she had the
equivalent of a high school education and could communicate in
English (Tr. 17).  The ALJ found that the transferability of job
skills was not an issue because plaintiff did not have past
relevant work (Tr. 17).  Based on these vocational factors and
plaintiff's RFC, the ALJ concluded that the Medical-Vocational
Guidelines Rule 202.20, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the
"Grids"), directed a finding of not disabled (Tr. 17).  The ALJ
did not call a vocational expert nor did she address the need to
call a vocational expert.

C. Analysis of the
   ALJ's Decision

        Plaintiff challenges only the ALJ's reliance on the
Grids at step five of her analysis.  Specifically, plaintiff
contends that (1) the ALJ found that plaintiff suffered from left
ulnar nerve injury, moderate limitations in social functioning,
moderate limitations in concentration, persistence or pace, and
environmental restrictions relating to plaintiff's asthma, but
failed to articulate a rationale for ignoring those impairments
at step five of the sequential evaluation, and (2) the foregoing
were significant nonexertional limitations that required the ALJ
to consult a vocational expert, which the ALJ failed to do
(Memorandum of Law in Support of Plaintiff's Motion for Judgment
on the Pleadings, dated Dec. 2, 2013, (Docket Item 23) ("Pl.
Mem.") at 20-24).  The Commissioner responds that the ALJ's
reliance on the Grids as a framework for decision-making was
proper because (1) plaintiff's social functioning and environmen-
tal limitations were not significant (Reply Memorandum of Law in
Support of the Acting Commissioner's Motion for Judgment on the
Pleadings, filed on February 11, 2014 (Docket Item 31) ("Comm'r
Reply") at 1-5, 7), and (2) plaintiff's moderate limitations in
concentration, persistence or pace and history of laceration at

27

the left ulnar nerve were taken into consideration by the ALJ in assessing plaintiff's RFC (Comm'r Reply at 6-7).

Plaintiff's issues really coalesce into one issue -- whether the ALJ erred by failing to call a vocational expert and relying exclusively on the Grids to determine if plaintiff was disabled.

Where, as here, a claimant suffers from nonexertional[6] limitations, the ALJ may need to call a vocational expert to determine whether the claimant is disabled.

> We have explained that the ALJ cannot rely on the Grids if a non-exertional impairment has any more than a "negligible" impact on a claimant's ability to per-form the full range of work, and instead must obtain the testimony of a vocational expert.  See Zabala v. Astrue, 595 F.3d 402, 411 (2d Cir. 2010); see also Saiz v. Barnhart, 392 F.3d 397, 400 (10th Cir. 2004) (per curiam).  A nonexertional impairment is non-negligible "when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment

---

[6]Except for plaintiff's ulnar nerve injury, all of plain-tiff's claimed impairments appear to be nonexertional because there is no evidence (and no reason to believe) that they affect her ability to sit, stand, walk, lift, carry, push or pull.  404 C.F.R. § 416.969a(b).  The ALJ did not make a finding concerning whether the pain resulting from her ulnar nerve injury is exer-tional or nonexertional, and the issue cannot be determined from the record before me.  If the pain affected plaintiff's ability to lift, carry, push or pull, the regulations define the impair-ment as exertional.  404 C.F.R. § 416.969a(b).  If the pain affected only her ability to perform manipulative or handling functions, the impairment would be nonexertional.  404 C.F.R. § 416.969a(c)(1)(vi).  See generally Butts v. Barnhart, supra, 388 F.3d at 381 n.1.

> opportunity." <u>Zabala</u>, 595 F.3d at 411 (internal quota-
> tions marks omitted).

<u>Selian v. Astrue</u>, 708 F.3d 409, 421-22 (2d Cir. 2013); <u>accord</u>
<u>Bapp v. Bowen</u>, <u>supra</u>, 802 F.2d at 605 ("we hold that application
of the grid guidelines and the necessity for expert testimony
must be determined on a case-by-case basis"), <u>citing</u> <u>Blacknall v.</u>
<u>Heckler</u>, 721 F.2d 1179, 1181 (9th Cir. 1983) (<u>per</u> <u>curiam</u>).  Thus,
where nonexertional limitations are claimed, the ALJ must first
"consider the intermediate question -- whether the range of work
[a claimant] could perform was so significantly diminished as to
require the introduction of vocational testimony."  <u>Bapp v.</u>
<u>Bowen</u>, <u>supra</u>, 802 F.2d at 606.  If the answer to that question is
in the affirmative, the ALJ cannot rely on the Grids alone and
must secure the testimony of a vocational expert to determine
whether the claimant is disabled.

The principal problem in this case is that the ALJ
failed to address the "intermediate question" set forth in <u>Bapp</u>
-- whether plaintiff's nonexertional limitations significantly
diminished her ability to perform the basic mental demands of
unskilled work -- and went directly to the Grids to determine
whether plaintiff was disabled.  <u>See</u> <u>Pratts v. Chater</u>, <u>supra</u>, 94
F.3d at 39.  The ALJ determined plaintiff's RFC solely on the
basis of her asthmatic and mental impairments and failed to

29

determine whether those impairments significantly diminished plaintiff's ability to perform "light" work.  This omitted step was legal error and requires a remand.  See Bapp v. Bowen, supra, 802 F.2d at 606 (remanding for failure to address the intermediate question); Westcott v. Colvin, 12-CV-4183 (FB), 2013 WL 5465609 at *4 (E.D.N.Y. Oct. 1, 2013) (on remand, "before applying the Grids, the ALJ must first analyze whether their application is appropriate"); Bunn v. Colvin, 11-CIV-6150 (NGG), 2013 WL 4039372 at *10 (E.D.N.Y. Aug. 7, 2013) (ordering the ALJ, on remand, "to determine whether the Commissioner has shown that Bunn's ability to perform the full range of light, unskilled work is not significantly diminished as a result of his nonexertional impairments"); Baron v. Astrue, supra, 2013 WL 1245455 at *31 (remanding because the ALJ "made no finding -- much less a defensible and articulated finding -- that Mrs. Baron did not suffer from [non-exertional] limitations"); Chavis v. Astrue, No. 5:11-CV-00220 (TJM/TWD), 2012 WL 6150851 at *14 (N.D.N.Y. Sept. 21, 2012) ("ALJ's failure to address the Plaintiff's nonexertional physical limitations and then determine whether or not they significantly limited the range of work permitted by her exertional limitations require remand on those issues"); Aas v. Astrue, 08-CV-4488 (DLI), 2010 WL 3924687 at *11 (E.D.N.Y. Sept. 29, 2010) (remanding because the "ALJ skipped the intermediate

question by failing to consider whether plaintiff's alleged
mental impairments/affective disorder so significantly diminished
his work ability that testimony from a vocational expert was
required"); Davis v. Astrue, supra, 2010 WL 2925357 at *9 (re-
manding because, "[a]fter documenting Plaintiff's nonexertional
limitations, the ALJ failed to consider whether they limited
Plaintiff's range of work"); Cangelosi v. Chater, 94-CV-2694,
1996 WL 663161 at *6 (E.D.N.Y. Nov. 5, 1996) ("The ALJ's failure
to . . . undertake a separate independent analysis to determine
the effect, if any, of Cangelosi's nonexertional limitations was
legal error.").

   In response, the Commissioner argues that plaintiff's
nonexertional limitations are not significant as a matter of law,
citing Social Security Ruling ("SSR") 85-15[7] and a number of
District Court decisions within this Circuit (Comm'r Reply at 1-
3).  This argument is not convincing.  First, as indicated in
footnote six, above, the ALJ did not specify whether she consid-
ered plaintiff's ulnar nerve condition to be exertional or non-
exertional.  If it is exertional, then SSR 85-15 has no applica-

---

   [7]SSR 85-15 states:  "[w]here a person has a medical restric-
tion to avoid excessive amounts of noise, dust, etc., the impact
on the broad world of work would be minimal because most job
environments do not involve great noise, amounts of dust, etc."
Social Security Ruling 85-15, available at 1985 WL 56857 at *8
(1985).

bility to this case.  SSR 85-15 applies only where the claimant suffers from solely nonexertional impairments.  Roma v. Astrue, 468 F. App'x 16, 20 (2d Cir. 2012) ("SSR 85-15, descriptively titled 'The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments,' does not apply to a case, such as this one, in which the claimant suffers from a combination of exertional and non-exertional impairments.").  Second, even if plaintiff's ulnar nerve condition is nonexertional, neither the example provided in SR 85-15 nor the cases cited by the Commissioner are dispositive because they do not address whether an individual who suffers from all the impairments plaintiff suffers from is disabled.[8]  See 20 C.F.R. §§ 416.920(e), 416.945(a)(2); SSR 96-8P, available at 1996 WL 374184 (July 2, 1996).  Whether one of plaintiff's impairments, by itself, warrants a finding of disability does not resolve the question of whether all of plaintiff's disabilities, taken together, warrant a finding of disability.  See Burgin v. Astrue,

---

[8]In this regard, I note that the ALJ did not conclude that plaintiff's ulnar nerve injury did not exist or that it had no impact on plaintiff.  Rather, she found that "claimant's allegations of her inability to function in the workplace are only credible to the degree that they are consistent with the above RFC assessment" (Tr. 16).  As discussed in the text, unless the ALJ found that plaintiff's ulnar nerve condition did not constitute any type of impairment, the ALJ should have considered it in determining whether plaintiff was disabled.

348 F. App'x 646, 647 (2d Cir. 2009) ("The Commissioner is
required to 'consider the combined effect of all of [the claim-
ant's] impairments without regard to whether any such impairment,
if considered separately, would be of sufficient severity' to
establish eligibility for Social Security benefits. 20 C.F.R.
§ 404.1523."); Baron v. Astrue, supra, 2013 WL 1245455 at *21.[9]

 Finally, to the extent that the Commissioner's argu-
ments can be read as asserting that the ALJ made an implicit
finding that plaintiff's nonexertional limitations were not
significant, the argument is not convincing.  The ALJ failed to
identify which impairments were exertional and which were non-
exertional and failed to address whether the nonexertional
limitations were significant.  If plaintiff had significant non-

---

[9]The Commissioner does cite one case in which the claimant
had some of the same impairments plaintiff had.  Sagastivelsa-
Garcia v. Colvin, 12 Civ. 9168 (JMF), 2014 WL 85121 at *2
(S.D.N.Y. Jan. 6, 2014) (Furman, D.J.).  Although I have no dis-
agreement with the conclusions reached by Judge Furman, I cannot
regard the case as controlling.  The claimant's impairments in
this case are not identical to the claimant's impairments in
Sagastivelsa-Garcia, and, even if they were, the determination of
whether a physical or mental impairment renders an individual
disabled inherently requires an individualized determination.  In
some individuals, depression may not affect the individual's
ability to work and to perform the activities of daily living.
In other cases, it may be so severe as to require hospitaliza-
tion.  A finding in one particular case that a condition or
combination of conditions did not render an individual disabled
provides little help in determining whether another individual
suffering from the same condition is disabled.

exertional limitations, the ALJ had an obligation to explain how she reached her conclusion, and her failure to do so is "plain error.'" St. Louis ex rel. D.H. v. Comm'r of Soc. Sec., No. 7:11-CV-847 (NAM), --- F. Supp. 2d ---, 2014 WL 2894438 at *5 (N.D.N.Y. June 25, 2014), quoting Kuleszo v. Barnhart, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002); Baron v. Astrue, supra, 2013 WL 1245455 at *19; accord Rivera v. Colvin, 11 Civ. 7469 (LTS)(DF), 2014 WL 2440718 at *36 (S.D.N.Y. May 30, 2014) (Swain, D.J.) (adopting Report & Recommendation by Freeman, M.J.); Lewis v. Astrue, 11 Civ. 7538, 2013 WL 5834466 at *22 (S.D.N.Y. Oct. 30, 2013) (Oetken, D.J.) ("Courts in this Circuit have long held that an ALJ's 'failure to acknowledge relevant evidence or to explain its implicit rejection is plain error.'" (citation omitted)); Camilo v. Comm'r of the Soc. Sec. Admin., 11 Civ. 1345 (DAB)(MHD), 2013 WL 5692435 at *15 (S.D.N.Y. Oct. 2, 2013) (Batts, D.J.) (adopting Report & Recommendation of Dolinger, M.J.); Pagan on Behalf of Pagan v. Chater, 923 F. Supp. 547, 556 (S.D.N.Y. 1996); Smith v. Bowen, 687 F. Supp. 902, 904 (S.D.N.Y. June 17, 1988).

Accordingly, on remand, the ALJ should re-evaluate whether the Commissioner has shown that plaintiff's capability to perform the full range of light work was not significantly diminished by her mental and environmental limitations.  While

this initial determination need not require a vocational expert, if the ALJ determines that plaintiff's nonexertional limitations significantly diminish her ability to perform the full range of "simple, light work," then the ALJ must secure the testimony of such an expert.

IV.   Conclusion

        Accordingly, for all the foregoing reasons, I respect-fully recommend that plaintiff's motion for judgment on the pleadings be granted to the extent of remanding this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this report and recommen-dation.  I further recommend that the Commissioner's motion for judgment on the pleadings be denied.

V.   OBJECTIONS

        Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed. R. Civ. P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable J. Paul Oetken, United States District Judge, 40 Foley Square,

Room 2101, New York, New York 10007 and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Oetken.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:   New York, New York
         July 21, 2014

                               Respectfully submitted,


                               HENRY PITMAN
                               United States Magistrate Judge

Copies transmitted to:

Christopher J. Bowes, Esq.
54 Cobblestone Drive
Shoreham, New York  11786

William V. Morrison, Esq.
P.O. Box 4284
Middletown, New York  10941

Daniel R. Janes, Esq.
Special Assistant U.S. Attorney
United States Attorney's Office
c/o Social Security Administration
Room 3904
26 Federal Plaza
New York, New York   10278